**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
---------------------------------------------------  :
SHIVA STEIN,                                         :
                                                     :
                Plaintiff,                           :      Civil Action No. 22-cv-6885
                                                     :
v.                                                   :      COMPLAINT FOR VIOLATIONS OF
                                                     :      SECTIONS 14(a) AND 20(a) OF THE
STONEMOR INC., ANDREW AXELROD,                       :      SECURITIES EXCHANGE ACT OF
JOSEPH M. REDLING, DAVID MILLER,                     :      1934
PATRICIA WELLENBACH, SPENCER E.                      :
GOLDENBERG, and STEPHEN NEGROTTI,                    :      JURY TRIAL DEMANDED
KEVIN PATRICK,                                       :
                                                     :
                Defendants.                          :
---------------------------------------------------  :
```

Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

1.      This is an action brought by Plaintiff against StoneMor Inc. ("StoneMor or the "Company") and the members StoneMor's board of directors (the "Board" or the "Individual Defendants" and collectively with the Company, the "Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the proposed acquisition of StoneMor by affiliates of Axar Capital Management, LP ("Axar Capital").

2.      Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A (the "Proxy Statement") to be filed on August 5, 2022 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby the Axar Cemetery Merger Corp. ("Merger Sub"), a wholly-owned subsidiary of Axar Cemetery Parent Corp. ("Parent"), will merge with and into StoneMor with StoneMor surviving as a wholly-owned subsidiary of Parent (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on May 24, 2022 (the "Merger Agreement"), each StoneMor stockholder will receive $3.50 in cash (the "Merger Consideration") for each StoneMor share owned.

3.      As discussed below, Defendants have asked StoneMor's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Kroll, LLC, operating through Duff & Phelps Opinion Practice ("Duff & Phelps") in support of its fairness opinion, and the sales process leading up to and concerning the Proposed Transaction.

4.      It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to StoneMor's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over Defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company's stock trades on the New York Stock Exchange, headquartered in this District, and because the Company's Proxy Solicitor, MacKenzie Partners, Inc., is also headquartered in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of StoneMor stocks and has held such stocks since prior to the wrongs complained of herein.

10.     Individual Defendant Andrew Axelrod ("Axelrod") has served as a member of the Board since June 2019 and is the Chairman of the Board. Axelrod is the founder of Axar Capital.

11.     Individual Defendant Joseph M. Redling has served as a member of the Board since July 2018 and is the Company's President and Chief Executive Officer.

12.     Individual Defendant David Miller has served as a member of the Board since June 2019.

13.     Individual Defendant Patricia Wellenbach has served as a member of the Board since March 2018.

3

14.     Individual Defendant Spencer E. Goldenberg has served as a member of the Board since June 2019.

15.     Individual Defendant Stephen Negrotti has served as a member of the Board since March 2018.

16.     Individual Defendant Kevin Patrick has served as a member of the Board since September 2020.

17.     Defendant StoneMor is a Delaware corporation and maintains its principal offices at 3331 Street Road, Suite 200, Bensalem, PA 19020.  The Company's stock trades on the New York Stock Exchange under the symbol "STON."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the "Individual Defendants" or the "Board."

19.     The defendants identified in paragraphs 10-17 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

20.     StoneMor owns and operates cemeteries and funeral homes in the United States. The company operates in two segments, Cemetery Operations and Funeral Home Operations. The Cemetery Operations segment provides cemetery property interment rights, such as burial lots, lawn and mausoleum crypts, and cremation niches; cemetery merchandise comprising burial vaults, caskets, grave markers, and memorials; and cemetery services, which include opening and closing, cremation, and cemetery merchandise installation services. The Funeral Home Operations segment offers caskets and other funeral related items; and funeral home services, such as family consultation, the removal and preparation of remains, insurance products, and the use of funeral home facilities for visitation and memorial services. As of March 30, 2022, it owned and operated

304 cemeteries and 72 funeral homes in 24 states and Puerto Rico Rico. The Company was incorporated in 2004 and is headquartered in Bensalem, Pennsylvania.

21.     On May 25, 2022, the Company announced the Proposed Transaction:

> BENSALEM, PA - May 25, 2022 - StoneMor Inc. (NYSE: STON) ("StoneMor" or the "Company"), a leading owner and operator of cemeteries and funeral homes, today announced that it has entered into a definitive merger agreement under which a subsidiary of Axar Capital Management, LP ("Axar") will be merged with and into StoneMor and all outstanding shares of StoneMor common stock not owned by Axar as to which dissenters' rights are not perfected will be converted into the right to receive $3.50 in cash per share. Axar currently owns approximately 75% of the outstanding shares of StoneMor common stock. The cash consideration represents a 54.2% premium to the Company's closing share price on May 24, 2022, the last trading day prior to today's announcement of the execution of a definitive merger agreement.
>
> The agreement was entered into following receipt of a proposal by Axar on September 22, 2021 in which Axar expressed an interest in pursuing discussions concerning strategic alternatives that might be beneficial to the Company and its various stakeholders. The transaction was negotiated on behalf of StoneMor by the Conflicts Committee of its Board of Directors, which is comprised entirely of independent directors, with the assistance of independent financial and legal advisors. Following the Conflicts Committee's unanimous recommendation, StoneMor's Board of Directors approved the merger agreement and has recommended that StoneMor's stockholders adopt and approve the merger agreement and the merger.
>
> "Our agreement with Axar delivers a significant premium for StoneMor's stockholders and ensures a strong foundation for us to continue our expansion," said Joe Redling, President and Chief Executive Officer. "Our Board firmly believes that this transaction is in the best interests of all of our stockholders other than Axar and its affiliates and delivers an ongoing commitment to excellence for our customers, employees and communities we serve."
>
> The agreement provides for a "go-shop" period during which the Conflicts Committee (acting through its financial advisor) will actively initiate, solicit, facilitate, encourage and evaluate alternative acquisition proposals, and potentially enter into negotiations with any parties that offer alternative acquisition proposals. The "go-shop" period is 60 days subsequent to signing of

the Merger Agreement, ending July 23, 2022. There can be no assurance that this "go-shop" process will result in a superior proposal, particularly in light of Axar's ownership position and the fact that Axar has no obligation to support any such superior proposal. StoneMor does not intend to disclose developments with respect to the solicitation process unless and until its Conflicts Committee and the Board of Directors has made a decision with respect to any potential superior proposal. The Company will pay Axar a termination fee in certain circumstances, including a fee equal to 2% of the aggregate value of the non-Axar shares if the Company terminates the agreement during the "go-shop" period to enter into a superior proposal that Axar supports, and a fee equal to 4% of the aggregate value of the non-Axar shares if the Company terminates the agreement after the "go-shop" period to enter into a superior proposal that Axar supports. No termination fee is payable if the Company terminates the agreement upon a change of recommendation in connection with a superior proposal that is not supported by Axar.

The merger is subject to approval by holders of a majority of the outstanding common stock of StoneMor and in addition, requires the approval by the holders of a majority of the outstanding common stock of StoneMor not owned by Axar or any of StoneMor's directors or executive officers or members of their immediate families. Axar has agreed to vote the shares of StoneMor common stock it owns in favor of the merger agreement. The merger agreement is also subject to customary closing conditions. Axar has fully committed financing and the transaction is not subject to a financing condition.

Subject to satisfaction of the conditions to closing, the transaction is currently expected to close in the fall of 2022. If the transaction is completed, StoneMor will become a privately held company and its stock will no longer trade on the New York Stock Exchange.

Duff & Phelps, now rebranded as Kroll, is serving as financial advisor and Faegre Drinker Biddle & Reath LLP is serving as legal counsel to the Conflicts Committee. Houlihan Lokey is serving as financial advisor and Schulte Roth & Zabel LLP is serving as legal counsel to Axar. Duane Morris LLP is serving as legal counsel to the Company.

* * *

22.    The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that StoneMor's stockholders are provided with the material information that has been

6

omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.**   **The Materially Incomplete and Misleading Proxy Statement**

23.   On August 5, 2022, StoneMor filed the Proxy Statement with the SEC in connection with the Proposed Transaction.   The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.   The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning the Sales Process*

24.   The Proxy Statement fails to provide material information concerning the sales process, including: (i) the reason why the Proxy Statement and the stockholder vote do not provide for a majority of the minority voting provision, since Axar owns 74.6% of the outstanding common shares of the Company while certain Company executives and directors own 2.8%; (ii) whether the Conflicts Committee was granted veto powers; and (iii) if the confidentiality agreement executed by Axar and the Company contained a "don't-ask-don't-waive" provision.

*Omissions and/or Material Misrepresentations Concerning Financial Analyses*

25.   With respect to Duff & Phelps' *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose: (i) the range of illustrative terminal values for StoneMor; (ii) the inputs and assumptions underlying the tax rate of 25.8%; (iii) the inputs and assumptions underlying the terminal growth rate of 3.0%; (iv) the inputs and assumptions underlying the discount rate of

3.50%; and (v) the inputs and assumptions underlying the use of the weighted cost of capital of 9.00% to 9.85%.

26.     With respect to Duff & Phelps' *Selected Companies Analysis*, the Proxy Statement fails to disclose the financial metrics for each company selected for the analysis.

27.     With respect to Duff & Phelps' *Selected Mergers and Acquisitions Transactions Analysis*, the Proxy Statement fails to disclose the financial metrics for each transaction selected for the analysis.

28.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

29.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

30.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

31.    Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

32.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

33.    Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives.

34.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate

remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.     The Individual Defendants acted as controlling persons of StoneMor within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of StoneMor, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of StoneMor, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

37.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

38.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of StoneMor, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue

contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

39.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.   The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

40.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

41.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

42.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## RELIEF REQUESTED

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

Dated: August 12, 2022                    **MELWANI & CHAN LLP**

                                        By:  */s/*  _____
                                             Gloria Kui Melwani (GM5661)
                                             1180 Avenue of the Americas, 8th Fl.
                                             New York, NY 10036
                                             Telephone: (212) 382-4620
                                             Email: gloria@melwanichan.com

                                             *Attorneys for Plaintiff*